

FILED

FEB 03 2021

CLERK

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | 3:95-CR-30098-CBK |
| Plaintiff, | |
| vs. | OPINION AND ORDER ON MOTION FOR COMPASSIONATE RELEASE |
| BARRY DOUGLAS STEAD, | |
| Defendant. | |

## INTRODUCTION

Defendant was convicted by a jury of second-degree murder, assaulting a federal officer, using or carrying a firearm during and in relation to a crime of violence, and being a felon in possession of a firearm.  He was sentenced on July 24, 1996, to a total sentence of 420 months imprisonment, four years supervised release, and $10,000 restitution.  He appealed his convictions and sentences and the United States Court of Appeals for the Eighth Circuit affirmed in a *per curium* opinion.  United States v. Stead, 107 F.3d 876, 1997 WL 94703 (8th Cir. 1997).  Defendant's motion to vacate, set aside, or correct his convictions and sentences was denied.  United States v. Stead, 67 F.Supp.2d 1064 (D.S.D. 1999).  Defendant is currently imprisoned at USP Lompoc in Lompoc, California.  The Bureau of Prisons ("BOP") has calculated his current release date as March 13, 2027.  https://www.bop.gov/inmateloc/ visited January 26, 2021.

Defendant filed a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A).  Defendant contends that the length of the sentence served, the needs of his elderly father, his declining health, and the threat of serious complications or death from DOVID-19 are extra-ordinary and compelling reasons which justify his release.  He requests a reduction of sentence to time served.  Defendant has served, as of December 1, 2020, 25 years of his sentence,  about 71%.

## DECISION

The Sentencing Reform Act of 1984, Pub. L. 98-473, Title II, § 212, authorized, *inter alia*, the district court, upon motion for the Director of the BOP, to reduce a prison term after

considering the factors set forth in 18 U.S.C. § 3553(a), "if it finds that extraordinary and compelling reasons warrant such a reduction and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." Effective November 1, 2006, the United States Sentencing Commission adopted Guidelines § 1B1.13, the policy statement on reduction of a term of imprisonment pursuant to § 3582(c)(1)(A). These provisions are known as the compassionate release provisions of the federal criminal code and the Federal Sentencing Guidelines.

Pursuant to the First Step Act of 2018, the district court is now authorized to grant compassionate release upon motion of a defendant after the exhaustion of administrative remedies. Pub. L. 115-391, § 603(b), 18 U.S.C. § 3582(c)(1)(A). The government does not contend that defendant has failed to exhaust his administrative remedies.

In evaluating a request for compassionate release, the district court is required to consider the factors set forth in section 3553(a), to the extent that they are applicable, and may reduce defendant's sentence of imprisonment if it finds that

(1)    (a) extraordinary and compelling reasons warrant such a reduction, or

       (b) the defendant is at least 70 years of age and has served at least 30 years
       in prison for the offense or offenses for which the defendant is currently
       imprisoned

and

(2)    the defendant is not a danger to the safety of any other person or the
       community.

18 U.S.C. § 3582(c)(1)(A), U.S.S.G. § 1B1.13.

Defendant requests compassionate release based upon his medical conditions, including obesity and Type 2 diabetes, and the fact that COVID 19 is wide-spread in the BOP system. Chief Judge Lange has observed:

> There can be no doubt that the effects of the global COVID-19 pandemic are
> extraordinary, and that the disease in some situations may be an "other reason" to
> grant compassionate release under § 1B1.13 comment note (D). The illness and
> the potential for its spread has affected the daily life of nearly every American
> citizen and has resulted in massive disruptions to the economy. Despite these
> drastic effects, "the mere existence of COVID-19 in society and the possibility
> that it may spread to a particular prison alone cannot independently
> justify compassionate release, especially considering BOP's statutory role, and its
> extensive and professional efforts to curtail the virus's spread." The question

2

> becomes whether [defendant's] medical conditions . . . combined with the
> crowded conditions of confinement justify compassionate release.

United States v. Frost, 2020 WL 3869294, at \*4 (D.S.D. July 9, 2020) *citing* United States v.
Raia, 954 F.3d 594, 597 (3d Cir. 2020).

Defendant is 52 years old. He suffers from obesity (he has a BMI of 39) and Type 2
diabetes. He has secondary hypertension which is controlled by medication. He had hepatitis C
which is resolved. He has high cholesterol but is taking no medication for that condition. The
CDC has set forth a non-exhaustive list of underling medical conditions that place a person at an
increased risk for severe illness from COVID-19: cancer, chronic kidney disease, COPD, Down
Syndrome, heart conditions, immunocompromised state, obesity (BMI of 30 or higher), severe
obesity (BMI of 40 or higher), pregnancy, sickle cell disease, smoking, and Type 2 diabetes
mellitus. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-
medical-conditions.html, visited January 25, 2021. Those who, *inter alia*, have hypertension
"might be at an increased risk" for severe illness. *Id*. Defendant's obesity and diabetes place
him in the category of a person at increased risk for severe illness from COVID-19.

Defendant is housed at the United States Penitentiary Lompoc in Lompoc, California.
That institution currently has zero inmate and six staff confirmed cases of COVID-19.
https://www.bop.gov/ coronavirus/, visited January 26, 2021. While Lompac has had a high
number of cases – 208 inmates and thirty-six staff have recovered – the current number of
infections is low. *Id*. USP Lompoc houses 830 inmates. The current level of COVID-19
infections in that facility is remarkably low. Two inmates have died of COVID-19 at USP
Lompoc during the pandemic.

Defendant proposes that he be released to reside with his father but has failed to state
where his father lives. At the time defendant was sentenced, his parents resided in North Hills,
California. Defendant resided in California with his family until he was 26 years old. Defendant
moved to South Dakota ten months prior to committing the offenses for which he is incarcerated.
Federal defendants are not entitled to be released to the district of their choice. Ordinarily they
are released to the district from which they were sentenced. Release to a district other than South
Dakota would require the agreement of the United States Probation and Pretrial Services office
and the assent of a federal judge in the District to which defendant seeks to be released.

3

Release to reside in Los Angeles County, California in not without great risk of infection from COVID-19. North Hills currently has a case rate of over 2,000 per 100,000 population. http://publichealth.lacounty.gov/media/coronavirus/locations.htm#top-25, visited January 27, 2021. The current case rate at Lompoc is zero. There are very few places in the United States where one is not at risk of contracting COVID-19. While COVID-19 certainly constitutes a severe public health risk, the fact that a defendant resides in a federal correctional facility does not, under the circumstances present in this case, justify compassionate release.

The Federal Bureau of Prisons is part of the federal government's "operation warp speed," an effort to quickly distribute the COVID-19 vaccine to federal prisons. https://www.bop.gov/resources/news/20210116_covid_vaccine_efforts_commended.jsp, visited January 21, 2021. All BOP facilities are expected to receive their first dose of the vaccine by mid-February. *Id.* Los Angeles County, where defendant's parents resided when he was sentenced, does not expect to offer a vaccine to persons in defendant's age group until late April/early May. http://publichealth.lacounty.gov/acd/ncorona2019/covidvaccinedistribution/, visited January 27, 2021.

Defendant's medical conditions are being managed at USP Lompac. That facility clearly has engaged in efforts to protect inmates as the spread of COVID-19 has been drastically reduced. Under the circumstances, defendant's current health conditions do not establish extraordinary and compelling reasons justifying his early release.

Even if I found that, in this defendant's case, the COVID-19 pandemic constituted cause for compassionate release, I would not order defendant's release. The sentencing factors set forth in 18 U.S.C. § 3553(a) do not warrant an early release. Defendant is a danger to the community.

On the day of the offenses, defendant and his brother were drinking with members of the Dubray family and defendant's residence. Two of the members of the Dubray family left and went to the home of Harry Dubray, Sr., which was three houses away. Harry Dubray, Jr., stayed and continued to drink with defendant and defendant's brother. Defendant got into an argument with Harry Dubray, Jr., and defendant beat him. Harry Dubray, Jr., went to his father's house. Harry Dubray, Sr., and the Knife brothers went to defendant's residence and an argument ensued. Harry Dubray, Sr. got into a physical altercation with defendant's brother. Defendant went into the residence and grabbed a loaded rifle. While Harry Dubray, Sr., and defendant's

4

brother were wrestling in the back yard, defendant approached them, told his brother to move aside, and shot Harry Dubray, Sr., in the back at close range. Dubray managed to walk back to his residence and defendant went inside his residence. When a tribal police officer arrived at defendant's residence, defendant confronted him with a loaded rifle. The officer drew his gun and a standoff ensued. After being told three times to drop the rifle, defendant finally complied. Harry Dubray, Sr., died four weeks later after multiple surgeries as a result of the shooting. Stead v. United States, 67 F. Supp. 2d 1064, 1070 (D.S.D. 1999).

Defendant's criminal history includes two burglaries committed when he was a juvenile. At age 18, he committed a misdemeanor burglary. At age 19, he broke into a home and was convicted of felony burglary. While on probation he absconded supervision and used marijuana. He was ordered to attend treatment but was terminated because he was smoking marijuana. He was sentenced to serve two years in the California Department of Corrections. At age 21, defendant committed a battery upon his sister. While on probation for that offense, he failed to appear. He was ordered to serve 30 days in county jail. At age 23, defendant was convicted of selling crack cocaine. He was sentenced to three years custody in the state prison but was paroled after six months. At age 25, defendant was sentenced to six years imprisonment for selling cocaine. He was paroled on October 28, 1994. He was on California parole at the time he shot and killed Harry Dubray, Sr. on December 1, 1995. Defendant reported to the U.S. Probation officer conducting his presentence interview that defendant committed burglaries and sold cocaine to support his own cocaine habit.

Defendant knew he was not authorized to possess a firearm due to his three prior felony convictions. He not only possessed a firearm, he used it to end a wrestling match by killing an unarmed man. Defendant thereafter threatened a tribal police officer with the rifle. During the ten months the defendant resided on the Rosebud Indian Reservation in South Dakota, defendant was arrested for possession of marijuana, disorderly conduct, theft, aggravated assault, aggravated trespass, and pubic consumption. Those charges had not been resolved prior to defendant's arrest on December 1, 1995. By the time he was age 25, defendant was considered a career offender under the Federal Sentencing Guidelines. He has a criminal history category of VI, the highest available category under the Federal Sentencing Guidelines. When the Bureau of Prisons considered his compassionate release request in November 2020, it was determined that defendant was a medium recidivism risk (on a minimum, low, medium, high scale). Since his

placement at the Federal Bureau of Prisons, defendant has forfeited nearly two years of good conduct time as a sanction for violating prison rules.

Even if extraordinary and compelling reasons warranted a reduction in sentence, defendant would not be entitled to compassionate release because he is a danger to the community.   18 U.S.C. § 3582(c)(1)(A), U.S.S.G. § 1B1.13.

## ORDER

I find that defendant is not entitled to compassionate release.  Accordingly,

IT IS ORDERED that defendant's motion, Doc. 85, for compassionate release is denied.

DATED this _30th_ day of January, 2021.

BY THE COURT:

CHARLES B. KORNMANN
United States District Judge